WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Sands, et al., | No. CV-22-08131-PCT-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Pending before the Court are Plaintiffs' Motion for Summary Judgment (Doc. 14) and Defendants' Cross-Motion for Summary Judgment (Doc. 16). The Court now rules on the motions.

**I.    BACKGROUND**

On March 20, 2023, Plaintiffs filed the pending Motion for Summary Judgment (Doc. 14). Defendant then filed a Response and Cross-Motion for Summary Judgment on April 19, 2023 (Doc. 16). Plaintiffs filed a Response to Defendant's Cross-Motion and Reply (Doc. 22), and Defendant filed a Reply (Doc. 27). Here, Plaintiffs allege that the Independent Hearing Officer ("IHO") erred in denying their claim for relocation assistant benefits provided by the Navajo-Hopi Settlement Act, Pub. L. No. 93-531, 88 Stat. 1712 (1974) (the "Settlement Act").

**A. The Settlement Act**

The Settlement Act attempted to resolve an inter-tribal conflict between the Hopi and Navajo Indians by authorizing a court-ordered partition of the land that was then-

jointly held by the two tribes. *See Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989). The Settlement Act further created the predecessor to the Office of Navajo and Hopi Indian Relocation ("ONHIR") to provide services and benefits to relocate individuals who resided on land allocated to the other tribe at the time. *See Laughter v. Off. of Navajo & Hopi Indian Relocation,* CV-16-08196-PCT-DLR, 2017 WL 2806841, at *1 (D. Ariz. June 29, 2017) (citing *Id.*). To be eligible for benefits under the Settlement Act, a Navajo applicant must provide that she was a legal resident of the Hopi Partitioned Land ("HPL") as of December 22, 1974, and that she was the head of household at that time. *See id.* The applicant bears the burden of proving legal residence and head of household status. *See id.* (citing 25 C.F.R. § 700.147 (1986)).

**B.  Facts and Procedural History**

Plaintiff Sara Sands ("S.S.") is an enrolled member of the Navajo Nation who applied for relocation benefits under the Settlement Act on August 20, 2010. (*See* Doc. 15 at 1). The application was denied on July 3, 2012, "based on a finding that she did not meet the eligibility requirement of having resided on the Hopi Partitioned Lands (HPL) on or before December 22, 1973 and as of December 22, 1974 . . . ." (*Id.* at 2). Plaintiff Lillie Schierholz ("L.S.") is an enrolled member of the Navajo Nation who applied for relocation benefits under the Settlement Act on August 23, 2010. (*See id.*). The application was denied on July 11, 2012, for the same reasons S.S.'s application was denied. (*See id.*). Both Plaintiffs appealed, and on November 20, 2015, a consolidated hearing was held before an IHO. (*See id.*).

At the hearing the IHO heard testimony from both Plaintiffs, S.S.'s daughter Renee, Plaintiffs' uncle Sammy Watson and his wife Betty, on behalf of the Plaintiffs. (*See* Doc. 8 at 234–35). Joseph Shelton testified on behalf of Defendant. (*See id.* at 235). Plaintiffs and their witnesses testified that S.S. and L.S. lived at their grandmother's homesite on HPL through 1974, although L.S. was temporarily away "for schooling and afterwards employment." (Doc. 14 at 1–2). Joseph Shelton, testified that S.S. and L.S. were not listed

on the Bureau of Indian Affairs ("BIA") enumeration.[1] (*See* Doc. 16 at 6). He also testified that he was bilingual and available to assist applicants with their relocation application during the time the Plaintiffs submitted their applications. (*See id.* at 7).

On June 3, 2016, the IHO issued a decision denying Plaintiffs' appeal and affirming Defendant's denial of benefits. (*See* Doc. 8 at 236; Doc. 8-2 at 163). To support his decision, the IHO cited inconsistencies between Plaintiffs' applications and testimony. (*See* Doc. 8 at 237; Doc. 8-2 at 163). The IHO also noted the absence of Plaintiffs' names from the BIA enumeration. (*See* Doc. 8 at 238; Doc. 8-2 at 163). The IHO stated that "[t]his is not a case where applicant can complain that the BIA enumerators simply skipped over them during the enumeration process" because neighbors of the Plaintiffs' claimed homesite were included in the enumeration. (Doc. 8 at 238). Additionally, "given the breadth of the claimed improvements . . . it would be highly unlikely to have been missed . . . ." (*Id.* at 238–39). For S.S.'s application specifically, the IHO also stated that "applicant's husband Ralph has an imperative to avoid driving to the top of Black Mesa in inclement weather since he needed to commute to work daily" and that applicant had other relatives living elsewhere that she could have been living with to support his conclusion. (*Id.* at 238).

The IHO also made findings about the witnesses' credibility. The IHO found that Plaintiffs were not credible witnesses regarding their residency. (*See* Doc. 8 at 234; Doc. 8-2 at 161). The IHO found that Sammy and Betty Watson were "indefinite about the frequency of seeing applicant[s]" which "limited" their credibility. (*See* Doc. 8 at 235; Doc. 8-2 at 162). Finally, the IHO found that Renee Sands and Joseph Shelton were credible witnesses. (*See* Doc. 8 at 235; Doc. 8-2 at 161–62).

On July 20, 2016, Defendant took Final Agency Action and upheld the denial of Plaintiffs' applications. (*See* Doc. 15 at 2–3). Plaintiffs then filed their Complaint on July 19, 2022, seeking judicial review of Defendant's administrative decision that they are not

---

[1] The BIA performed an "enumeration" or census of the people and improvements to land located within the former joint-use area that became HPL and Navajo Partitioned Land ("NPL") in 1974 and 1975.

- 3 -

entitled to relocation benefits under the Settlement Act. (Doc. 1).

## II. STANDARD OF REVIEW

The Administrative Procedure Act ("APA") governs judicial review of agency decisions under the Settlement Act. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). The APA provides that the Court may set aside an administrative agency's decision only if that decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo-Hopi Relocation Comm'n*, 878 F.2d 1119, 1122 (9th Cir. 1984) (citing 5 U.S.C. § 706(2)(A), (E) (1982); *Walker v. NHIRC*, 728 F.2d 1276, 1278 (9th Cir. 1984)). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). Under this standard, the Court applies a narrow and highly deferential standard of review:

> To make this finding the court must consider whether the decision was based on the consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)*, abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (citations omitted).

Unlike summary judgment in an original district court proceeding, the function of the Court in a review of an administrative proceeding "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985). "Where evidence is susceptible of more than one rational interpretation, it is the [IHO's] conclusion which must be upheld; and in reaching his findings, the [IHO] is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (1984) (citations omitted). Ultimately, the Court must affirm if the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Ranchers Cattleman Action Legal Fund United*

*Stockgrowers of America v. U.S. Dep't of Agr.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (quoting *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004)).

## III. CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs contend that the IHO's decision "is unsupported by substantial evidence, is arbitrary, capricious and contrary to law." (Doc. 14 at 17). Defendant argues that "Plaintiffs have not met their burden to establish that the IHO's decision was a[r]bitrary and capricious or unsupported by substantial evidence." (Doc. 16 at 9).

### A. Extra-Record Material

As a threshold matter, Defendant argues that Plaintiffs are attempting to improperly include "extra record materials" through exhibits attached in their Motion for Summary Judgment and Response. (*See* Doc. 16 at 8; Doc. 27 at 8). Defendant seeks to exclude Exhibits 3–8 of Plaintiffs' Motion for Summary Judgment and Exhibits 7 and 8 of Plaintiffs' Response. (Doc. 27 at 8). Exhibits 3–8 are transcripts of prior IHO decisions. (*See* Doc. 14-1; Doc. 22-1)."[T]he Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)). There are "narrow exceptions" for when a court may consider "extra-record" evidence:

> (1) If admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Lands Council*, 395 F.3d at 1030 (internal quotation marks omitted) (citing *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).

Plaintiffs argue that "exception 1, 3 and 4 all apply in this case." (Doc. 22 at 14). For the first exception, Plaintiffs contend that prior IHO decisions have repeatedly been

used to demonstrate whether the IHO considered all relevant factors. (*Id.* at 14). Plaintiffs argue the Court has relied on the "precedential effect [of prior decisions] when the evidence of one case on a crucial issue is the same or similar in his other decisions." (*Id.* at 15). Thus, the prior decisions are necessary to show the IHO did not consider all relevant factors or explain his decision in this case. (*See id.* at 17). "Because an agency must follow its own precedent or else explain any deviation, this Court may consider prior ONHIR decisions to determine whether a decision is arbitrary and capricious." *Stago v. Off. of Navajo & Hopi Indian Relocation*, 562 F. Supp. 3d 95, 102 (D. Ariz. 2021) (citing *Torpey v. Off. of Navajo & Hopi Indian Relocation*, No. CV-17-08184-PCT-SMB, 2019 U.S. Dist. LEXIS 154168, at *9–10 (D. Ariz. Sept. 6, 2019)). "However, previous decisions only serve this purpose if they carry precedential value in the case at hand." *See Whitehair v. Off. of Navajo & Hopi Indian Relocation*, No. CV-17-08278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6, 2018). Therefore, this Court must determine if the attached cases "set forth ONHIR policy or if they involve facts indistinguishable from the instant case." *Stago*, 562 F. Supp. 3d at 102.

In *Stago*, the court refused to admit exhibits "to demonstrate that 'numerous applicants for benefits have been certified to receive them despite . . . not appearing in the enumeration.'" *Id.* The court, in part, excluded them because "the plaintiff cited no authority to suggest that the decisions had precedential value, and where the Court could not conclude 'that Plaintiff's hand-picked sample of cases represents a settled course of adjudication and a general policy by which Defendant's exercise of discretion will be governed.'" *Id.* (quoting *Whitehair*, 2018 WL 6418665, at *3). Here, Plaintiffs argue the extra-records demonstrate that the IHO did not consider all relevant factors because the IHO certified other applicants for benefits when they were not listed in the BIA Enumeration. (*See* Doc. 22 at 17). This is the same argument the court in *Stago* rejected. Plaintiffs did not specify any other reason the cases attached are indistinguishable from their case. Thus, the Court will not supplement the record with Exhibits 3–8 under the first exception.

For the third exception, Plaintiffs contend that "supplementation is needed to explain the terms 'residence' and 'temporarily away' in the context of the complex subject . . . ." (Doc. 22 at 17). In response, Defendant argues "this Court has ruled on residency issues in ONHIR cases dozens of times over several decades and is therefore well versed in the concept of residency." (Doc. 27 at 9). Plaintiffs fail to cite case law where a court has used transcripts of prior decisions to explain the term "residence." Therefore, the Court concludes that Plaintiffs have not met the "heavy burden to show that additional materials sought are necessary . . . ." *Fence Creek Cattle Co. v. U.S. Forest Service*, 602 F.3d 1125, 1131 (9th Cir. 2010).

Additionally, Defendant argues that the term "temporarily away" is irrelevant to this case because Plaintiffs waived this argument. (*See id.*) Defendant contends that "Plaintiffs have waived any argument that they were 'temporarily away' from the HPL . . . by failing to raise this argument in their MSJ." (Doc. 27 at 3). "[A]rguments raised for the first time in a reply brief are waived." *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012). Plaintiffs did not argue they were temporarily away from their homesite until their Response. Thus, Plaintiffs have waived this argument and the Court does not need to supplement the record to explain the term "temporarily away."

For the fourth exception, Plaintiffs contend that "contrary enumeration decisions of the same decision-maker without adequate explanation demonstrates unequal treatment and bad faith." (Doc. 22 at 17). Defendant argues that this argument is "exactly what the [c]ourt in *Tso* rejected . . . ." (Doc. 27 at 9). In *Tso v. Off. of Navajo & Hopi Indian Relocation*, the court considered whether five prior IHO decisions could be admitted under the fourth exception to establish the agency acted in bad faith. No. CV-17-08183-PCT-JJT, 2019 WL 1877360 at *7 (D. Ariz. Apr. 26, 2019). The court found that these decisions "offered only a limited snapshot into the administrative record of those five unrelated relocation benefits cases" and did not admit the exhibits. *Id.* at *8. Similarly, here, Plaintiffs are attempting to supplement the record with six prior IHO decisions. Therefore, following

- 7 -

the court's reasoning in *Tso*, the Court will not supplement the record with these exhibits under the fourth exception.

### B. BIA Enumeration

Next, Plaintiffs allege that the IHO, "failed to properly consider, the testimony of [S.S], [L.S.] and their witnesses about their absence from the Enumeration, because he decided that the BIA enumeration was sufficient evidence to deny their application." (Doc. 14 at 9). The BIA enumeration alone cannot establish residence, but it may be used as *prima facie* evidence of residency that the Plaintiff then has the burden of disproving.

Here, the IHO relied, in part, on the BIA enumeration to establish that Plaintiffs did not reside on HPL as of December 22, 1974. (*See* Doc. 8 at 236–39; Doc. 8-2 at 163–66). The IHO used inconsistencies between the Plaintiffs' applications and their testimony, and the aerial map created by the BIA to determine Plaintiffs failed to overcome the *prima facie* evidence establishing their residency. (*See* Doc. 8 at 239; Doc. 8-2 at 596). Thus, the IHO did not base his findings *exclusively* on the BIA enumeration, but permissively used the BIA enumeration as part of a larger body of evidence establishing Plaintiffs did not reside on HPL as of December 22, 1974.

### C. Credibility Findings

Plaintiffs also allege that the IHO's credibility findings for Plaintiffs and their witnesses were not supported by substantial evidence. (*See* Doc. 14 at 11, 13). "When the decision of an ALJ rests on the negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). The Ninth Circuit further explained that "if an ALJ has grounds for disbelieving material testimony, it is both reasonable and desirable to require the ALJ to articulate those grounds in the original decision." *Id.* at 740 (citing *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396 (9th Cir. 1988)). Nevertheless, an agency's "credibility findings are granted substantial deference by reviewing courts." *De Valley v. I.N.S.*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted).

1          Here, the IHO found that Plaintiffs were not credible witnesses regarding their
2   residency, and that Sammy and Betty Watson were "indefinite about the frequency of
3   seeing applicant[s]" which "limited" their credibility. (*See* Doc. 8 at 234–35, Doc. 8-2 at
4   161–62). Plaintiffs contend that the IHO's credibility findings were unsupported "with
5   little if any specific and cogent reason." (Doc. 14 at 12). The record, however, demonstrates
6   that the IHO offered specific and cogent reasons supporting his credibility findings as to
7   the Plaintiffs. These findings are entitled to substantial deference by the Court. *See De*
8   *Valle*, 901 F.2d at 792.

9          The IHO found that the Plaintiffs were not credible regarding their residency
10  because their testimony was inconsistent with their written applications. (*See* Doc. 8 at 234,
11  Doc. 8-2 at 161). "[A]n IHO may adequately find a lack of credibility based on internal
12  inconsistencies in a witness's testimony . . . ." *Begay v. Off. of Navajo & Hopi Indian*
13  *Relocation*, No. CV-20-08102, 2021 WL 4247919, at *4 (D. Ariz. 2021). There were
14  inconsistencies between S.S. and L.S.'s ONHIR applications and their testimony during
15  the hearing. On S.S.'s application, she answered that she lived on NPL on December 22,
16  1974, two different times. (*See* Doc. 8 at 233). However, "[i]n her testimony at the appeal
17  hearing, applicant's testimony was completely opposite . . . ." (*Id.* at 237). On L.S.'s
18  application, she wrote that she was living with her grandfather and grandmother "when my
19  late grandfather was removed from his land on top of Black Mesa." (Doc. 8-2 at 160)
20  (internal quotation marks omitted). However, "her testimonial claim is that she lived at [her
21  grandmother's] residence . . . ." (*Id.* at 163).

22         Plaintiffs contend that the IHO cannot base his credibility determination on these
23  inconsistencies because they did not understand what the application was asking or what
24  "under the penalty of perjury" meant. (Doc. 22 at 6). "Plaintiffs who were 59 and 71 when
25  they applied, spoke Navajo as their primary language and failed to understand what certain
26  questions were asking them." (*Id.* at 3). Plaintiffs then cite asylum application cases where
27  courts have held that applications "completed without the assistance of counsel . . . should
28  be read charitably." (Doc. 22 at 3) (citation omitted). Defendant points to three reasons

why Plaintiffs' arguments are without merit. First, L.S.'s daughter helped her fill out her application. (*See* Doc. 27 at 3). Second, "Joseph Shelton testified that he is bilingual, and that he (or another bilingual ONHIR employee) would have been available to assist Plaintiffs." (*Id.* at 3-4). Third, the IHO stated that the responses in the application itself reveal that the Plaintiffs understood the questions. (*Id.* at 4). "It is evident that [S.S.] understood the distinction between Hopi Partitioned Land and Navajo Partitioned Land and she included that distinction about the partitioning in her answers to the residency questions on her application." (Doc. 8-2 at 164). Plaintiffs also claim the IHO cannot base his credibility determination on these inconsistencies because "he did not give them an opportunity to reconcile them." (Doc. 22 at 6). However, as Defendant points out, Plaintiffs were asked about the inconsistencies on cross-examination. (*See* Doc. 16 at 5–6). Finally, Plaintiffs contend that their Denial Letters contained erroneous information and, if corrected, would support their testimony. (*See* Doc. 14 at 3).

The Ninth Circuit has recognized that the IHO alone is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether [a] [witness]'s testimony has about it the ring of truth." *Sarvia-Quintanilla v. U.S. I.N.S.*, 767 F.2d 1387, 1395 (9th Cir. 1985). Additionally, "inconsistencies in the Plaintiff's own past statements . . . [are] [e]xtremely relevant," when determining credibility. *Begay*, 2021 WL 4247919, at *5. Therefore, the IHO permissibly based his credibility findings on the inconsistencies between the Plaintiffs' testimony and the rest of the record. Accordingly, the Court finds that the IHO did articulate specific and cogent reasons for his credibility findings of the Plaintiffs, which were therefore, supported by substantial evidence.

The IHO found that Sammy and Betty Watson had limited credibility because they were "indefinite about the frequency of seeing applicant[s] at Black Mesa . . . ." (Doc. 8 at 235; Doc. 8-2 at 162). Plaintiffs argue the IHO "failed to identify any part of their testimony that he thought was 'indefinite.'" (Doc. 22 at 10). The Court agrees. In *Beam v. Off. of*

*Navajo & Hopi Indian Relocation*, the IHO stated that the plaintiffs' testimony was "exaggerated and not credible." 624 F. Supp. 3d 1069, 1076 (D. Ariz. 2022). The court found "the IHO's one-sentence credibility determinations" did not offer sufficient support for his findings because "the IHO failed to articulate reasons supporting his conclusion." *Id.* at 1077–78. Similarly, in the present case the IHO did not articulate why the Watsons' testimony about the frequency of seeing the Plaintiffs was "indefinite." Thus, the IHO failed to support his negative credibility determinations with specific, cogent reasons from the record. If the IHO based his decision on the Watsons' testimony, then he was required to "make findings on the record and [] support those findings by pointing to substantial evidence on the record." *Ceguerra*, 933 F.2d at 738. However, the IHO did not base his final determination of relocation benefits on the Watsons' testimony. Thus, his failure to support his credibility findings with substantial evidence on the record does not change the overall outcome.

**D. Trustee Responsibility**

Plaintiffs contend the ONHIR breached its duty to Plaintiffs "as trustee to members of tribes facing relocation." (Doc. 14 at 14). First, Plaintiffs argue the ONHIR "cannot pick and choose among its beneficiaries." (*Id.*). "ONHIR has a duty only to disburse benefits to those authorized to receive them under the Settlement Act. Thus, whether ONHIR has a duty to disburse benefits to Plaintiffs flows from the IHO's decision, but ONHIR's duty to disburse benefits to eligible applicants does not dictate Plaintiffs' eligibility." *Stago*, 562 F. Supp. 3d at 106. Therefore, the ONHIR did not breach a duty in deciding that Plaintiffs were not eligible for relocation benefits.

Second, Plaintiffs contend that the "ONHIR's delays in discharging its obligations have been unreasonable and egregious." (Doc. 14 at 17). Plaintiffs claim that the "ONHIR is solely responsible for the nineteen-year cessation of the application process . . . [and] alone is responsible for the five years of extensions it unilaterally granted itself . . . ." (*Id.*). The Court finds this argument unpersuasive because there is no evidence the delay was unreasonable. "In the wake of *Herbert*, ONHIR developed new policies and procedures

that caused a delay in commercial proceedings. [citation omitted] They also received 'almost 1300' additional applications around that same time." *Kirk v. Off. of Navajo & Hopi Indian Relocation*, 367 F. Supp. 3d 1028, 1038 (D. Ariz. 2019) (finding plaintiff's own delay of six years "indicate time is not of the essence for her"); *see also Bahe v. Off. of Navajo*, No. CV-17-08016-PCT-DLR, 2017 WL 6618872, at *6 (D. Ariz. 2017) (finding Plaintiff's claim of unnecessary delay did "not rise to the level of a breach of a fiduciary duty"). Plaintiffs applied for relocation benefits in 2010 and the ONHIR denied them two years later in 2012. (*See* Doc. 16 at 17). Plaintiffs waited six years to seek review of the ONHIR's decision. (*See id.* at 18). Following *Kirk*, the Court finds the ONHIR has not acted in an unreasonable or egregious manner. Thus, the ONHIR did not breach a duty to the Plaintiffs.

## IV. CONCLUSION

For the reasons stated above, Defendant ONHIR's decision to deny relocation benefits was not arbitrary, capricious, or an abuse of discretion. It was in accordance with law and supported by substantial evidence. Therefore, Defendant is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** Plaintiff Sands, et al.'s Motion for Summary Judgment (Doc. 14) is **DENIED**.

**IT IS FURTHER ORDERED** Defendant ONHIR's Cross-Motion for Summary Judgment (Doc. 16) is **GRANTED**. Defendant's administrative decision denying Plaintiff's application for relocation benefits is, therefore, **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 30th day of November, 2023.

James A. Teilborg
Senior United States District Judge